THOMAS, Justice.
This controversy has come to us under Section 4(2) of Article V of the Con *427 stitution, F.S.A., vesting jurisdiction in this Court to determine via certiorari “any decision of a district court of appeal * * * that is in direct conflict with a decision of another district court of appeal or of the supreme court on the same point of law * * *»
It is plain to us that in this case such a conflict has been created by the decision of the District Court of Appeal, Third District.
The respondents had filed in the circuit court a complaint against the City of Hialeah contending that the city had issued a liquor license to Banyan Cafeterias in violation of Section 4.24 of the city code which, read in pari materia with Section 4.13, prohibits the sale of alcoholic beverages within 1500 feet of an established church. The complaint included “requests” that the court order revocation of the license and enjoin the operation of the liquor store at the place described which is located within 1500 feet of The Faith Lutheran Church.
Intervenor in the case was Banyan Cafeterias, Inc., #3, a Florida corporation, appellant in the District Court of Appeal, Third District.
Inasmuch as The Faith Lutheran Church is the prime party at interest, we will refer to the respondents as the “Church” and to the petitioner as the “licensee.”
We have digested the prayer of the complaint which seems to allude to the affirmative relief sought without specifying that a declaratory decree defining the Church’s rights and status was desired. However, from the whole pleading it appears that the complaint was one not only for mandatory injunction but for declaration of rights and status as well, and such was the way it was construed by the District Court of Appeal.
The controversy reached the District Court by appeal from the order of the circuit judge denying a motion for summary decree. In the opinion the District Court of Appeal succinctly and clearly stated the salient facts, then said that “the question before the trial court * * * was not whether [the Church] was entitled to supplementary relief * * * but whether [the Church] was entitled to a declaration of rights.” Thus the court considered that there were two independent features to the litigation, or the relief requested, one dealing with a clarification of the Church’s-rights or status, and the other with affirmative relief. The court emphasized this position by holding that the complaint did not fail to state a cause for “equitable relief in the form of a declaration of rights” and announcing that there was no occasion to decide either what declaration should be made or what supplemental relief should be granted, “if any.”
This disposition of the matter does not seem to comport with the decision of this court in Bryant v. Gray, Fla., 70 So.2d 581, that as a prerequisite to declaratory relief there must be a genuine controversy, hence a need for the declaration. Of like effect were our decisions in Local No. 234, Etc. v. Henley & Beckwith, Inc., Fla., 66 So.2d 818, and Ervin v. Taylor, Fla., 66 So.2d 816. Thus a conflict was created which brought the case here.
It does not appear in the present litigation that there is a lack of justiciable question but it does seem to us that the question of declaration of rights and affirmative relief are so interdependent that the case could not be properly determined on the former aspect while the latter was wholly disregarded. In other words, it appears that it would be feckless to hold that the Church was entitled to a ruling that its complaint was sufficient to support a declaratory decree regardless of its request for mandatory or injunctive relief. If the latter is eliminated there is no justiciable issue.
The licensee claims here that conflict arose from the language of the opinion that his contention that the Church was without the “requisite standing to coerce government action” was “without merit,” followed by the statement that “any person” entertaining doubt as to his rights and status could obtain a declaration as to them. This added to what we have already distilled *428 from the opinion develops the thought of the court that declaratory and affirmative relief were severable and independent.
The licensee evidently construes the phrase “requisite standing” as synonymous with “special damage” for he contends that the .pronouncement is in disharmony with the holding of this court in Donovan v. Schott, Fla., 58 So.2d 847, and with decisions of the District Court of Appeal, Second District, in Guernsey v. Haley, Fla.App., 107 So.2d 184, and Ashe v. City of Boca Raton, Fla.App., 133 So.2d 122. In'the first of these it was held that the .interest of the plaintiff was too remote and ¡speculative to secure to him the coercive power of a court; in the second, the court held that the persons seeking relief had no standing to assert their rights because their ■ interest was not different from others in . the county and state; in the third, the court quite properly held that under the Declaratory Judgments Act, Chapter 87, one could .not secure relief in the absence of a present justiciable question and that such a question was not presented in the absence of allegations clearly showing that the act sought to be prohibited would result in special injury.
Comparing the opinions in the cases to .which we alluded at the outset and those cited by the licensee with the instant one, . the licensee contends that a conflict has arisen and we think a fair construction of the language quoted from the opinion of the District Court of Appeal justifies the position, because “requisite standing to coerce governmental action” considered in the context of the whole opinion undoubtedly meant the special interest the Church must have had to prevail in the suit.
In sum, we repeat at this point that there was a conflict between the opinion we are reviewing and those rendered by other District Courts of Appeal and by this Court.
This introduces the merits of the controversy, namely, the presence or absence of an injury to the Church different in kind from that suffered by any other person in the community.
When the case was presented to this Court counsel for the licensee launched immediately into an attack against the lack of any special or unique damage peculiar to the Church, and they and their adversaries, counsel for the Church, faithfully and thoroughly reviewed the decisions holding unequivocally that before one can successfully assault an action by a city as being in contravention of an ordinance, or seek to enjoin a public nuisance, he must show injury to himself different in kind, as distinguished from difference in degree, from that sustained by other members of the community.
The Church insists that there is nothing in the opinion of the District Court of Appeal stating that special injury is not a prerequisite to prevailing in the suit. If the two phases of the case could be dealt with separately that would be literally true, but if, as we believe, the two aspects are not severable, then the Court by holding that the complaint stated a cause of action inferentially decided that that element was not indispensable to recovery.
Without disturbing our many decisions announcing and re-announcing this familiar rule with reference to necessity for a showing of special interest as a basis for attacking the action of the city in issuing a license in the face of the prohibition of an ordinance we are convinced that in the facts of this case as alleged, and for that matter, by the very action of the city, the special interest, peculiar to the Church is demonstrated. The sphere of effectiveness of the proscription is a circle 3000 feet in diameter, every point on which is equidistant from the center, and this center is the Church. This perimeter defines the area in which liquor stores may not be operated because by fair construction of the legislative action of the city, the central feature, the Church itself, should be free of any atmosphere or influence of the liquor store inimical to the Church. By designating the Church as the pivot on which the compass would turn in describing the circular prohibited area, the city in *429 effect invested the Church with a special interest. The area in which the conduct of liquor sales was tabu was created because of the Church, and believing this to be inescapable we think there would be no logic in holding that in such a situation the Church, seeking protection from violation of the law enacted to protect it, would nonetheless be forced to establish that it would suffer an injury different in kind from others within the area created for its protection. The Church was the very raison d’etre of the ordinance.
So we conclude that the order of the District Court of Appeal affirming the judgment of the trial court should be affirmed with directions to proceed in accordance with this opinion and such of the opinion of the District Court of Appeal as is not in conflict with the views we have expressed.
ROBERTS, C. J., and TERRELL, DREW and CALDWELL, JJ., concur.