261 So.2d 832 (1972)
Grace RENARD, Petitioner,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, et al., Respondents.
No. 41388.
Supreme Court of Florida.
April 19, 1972.
*833 Eugene P. Spellman, of Law Offices of Eugene P. Spellman, Miami, for petitioner.
Stuart Simon, County Atty., and St. Julien P. Rosemond, Asst. County Atty., and Paul Siegel, of Sinclair, Louis, Sand & Siegel, Miami, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Third District, reported at 249 So.2d 500. Jurisdiction is based on the certification of the District Court under Article V, § 4(2) of *834 the Florida Constitution, F.S.A., that the decision sought to be reviewed passes upon a question of great public interest, to-wit:
"The standing necessary for a plaintiff to (1) enforce a valid zoning ordinance; (2) attack a validly enacted zoning ordinance as not being fairly debatable and therefore an arbitrary and unreasonable exercise of legislative power; and (3) attack a void ordinance, i.e., one enacted without proper notice required under the enabling statute or authority creating the zoning power."
Petitioner Renard and respondents Richter, owned certain adjoining properties in the unincorporated area of Dade County zoned IU-2, industrial. The Richters applied for a rezoning of their parcel. The Board of County Commissioners ultimately permitted a rezoning from IU-2 to multiple family residence with certain exceptions relative to a nine-hole golf course and a variance for private, in lieu of public, roads. This was in accordance with the recommendations of the planning board as approved by the zoning appeals board of the county.
Petitioner was an objector in the zoning proceedings held before the Dade County Zoning Appeals Board and an objector before the Board of County Commissioners. Following adverse rulings by the appeals board and County Commission, petitioner sought certiorari before the Circuit Court pursuant to applicable county ordinances.[1]
The Circuit Court ruled that petitioner, not having alleged a special interest, had no standing to prosecute the matter in the Circuit Court and, even if she had standing, the record adequately demonstrated that the issue was fairly debatable and petitioner would not have been entitled to the relief sought.
On appeal, the District Court held that petitioner had sufficient standing to institute suit in the trial court but, that the rezoning in question was fairly debatable and therefore within the legislative discretion of the Board of County Commissioners. The District Court affirmed the judgment of the trial court but certified its decision as one passing on a question of great public interest.
The decision of the District Court on the question certified is as follows:[2]
"First, as indicated above, the appellant as an abutting property owner to the property rezoned would, in fact, suffer a special damage by virtue of the increased setback restriction different in kind from the community generally; and this would meet the test of special damage. But, even without meeting this test, we hold that these cases would not be applicable to a property owner within the area wherein actual notice was required to be sent to him prior to any rezoning hearing. Anything to the contrary said in S.A. Lynch Investment Corporation v. City of Miami, supra, is hereby specifically receded from. We further note that there is a distinction in the cases relied on by the County when there is a proceeding in which a plaintiff seeks to enforce an existing zoning ordinance, such as a violation of a setback requirement, special damage is necessary, and no special damage is necessary when a plaintiff seeks to *835 have an act of a zoning authority declared void or is within the immediate area to be affected. Hartnett v. Austin, Fla. 1956, 93 So.2d 86; Josephson v. Autrey, Fla. 1957, 96 So.2d 784. In other words, we hold special damage must be shown when a taxpayer or property owner seeks to enjoin the violation of an existing ordinance [i.e. Boucher v. Novotny, Fla. 1958, 102 So.2d 132; Conrad v. Jackson, Fla. 1958, 107 So.2d 369], but need not be shown if the taxpayer or property owner is within the affected range of the property which requires actual notice before the rezoning made may be considered by the legislative body [Hartnett v. Austin, supra; Elwyn v. City of Miami, Fla.App. 1959, 113 So.2d 849; Friedland v. City of Hollywood, Fla.App. 1961, 130 So.2d 306; Vol. 3, American Law of Zoning, Anderson, § 21.05, p. 558], or when he seeks to review an alleged void act. Hartnett v. Austin, supra; Josephson v. Autrey, supra; Rhodes v. City of Homestead, Fla.App. 1971, 248 So.2d 674 (opinion filed May 25, 1971). Therefore, we find that in the instant case the appellant had the standing to institute the suit in the trial court." (Emphasis supplied.)
In the years following this Court's decision in Boucher v. Novotny,[3] a split has developed between the various District Courts on the issue of standing to sue in zoning matters. The Boucher case was a suit to enjoin the violation of the setback requirements of a municipal zoning ordinance. The Bouchers sought to obtain mandatory injunctive relief to compel the Novotnys to remove allegedly illegal encroachments constructed on their motel. The City had approved the building plans for the Novotny's motel which included the complained of encroachment. The properties of the parties located in the City of Clearwater, were separated by a sixty-foot wide street. The Bouchers attempted to allege special damages by reason of proximity and by reason of being within the zoning area subject to the same setback requirements as the Novotny's property. This Court held, however, that the Bouchers did not have sufficient standing to sue and stated the following rule:[4]
"We, therefore, align ourselves with the authorities which hold that one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole." (Emphasis supplied.)
The "special damage" rule of the Boucher case is an outgrowth of the law of public nuisance.[5] Zoning violations have historically been treated as public nuisances not subject to suit by an individual unless that individual has suffered damages different in kind and degree from the rest of the community. The Boucher rule was not intended to be applied to zoning matters other than suits by individuals for zoning violations.[6]
The general rule regarding standing to contest the action of a zoning authority was *836 stated by this Court in Josephson v. Autrey:[7]
"We have on numerous occasions held that persons adversely affected by zoning ordinances or the action of zoning agencies have a status as parties sufficient to entitle them to proceed in court to seek relief."
To like effect is this Court's decision in Hartnett v. Austin.[8]
In Wags Transportation System v. City of Miami Beach,[9] this Court held that homeowners in a zoning district would be permitted to intervene in an appeal from a decree breaking zoning restrictions and commercializing the area where their homes were located.
The District Court of Appeal, Third District, in Elwyn v. City of Miami,[10] held that abutting homeowners were entitled to maintain a suit challenging an ordinance granting a variance for a gasoline service station. On petition for rehearing, the Boucher case was raised by the zoning authority and distinguished by the District Court as follows:
"That case [Boucher] was not applicable here because of material difference in the factual situations presented in the two cases.
* * * * * *
"The instant case was not one dealing with the violation of a zoning ordinance, but one which challenged the validity of an amendatory zoning ordinance, which, by granting a variance amounting to spot zoning, permitted appellees to put their property to a liberal business use (gasoline service station), prohibited in the more restricted R-3 classification for which the area involved was zoned. The right of an adjacent or nearby home owner directly affected by an alleged improper intrusion of such liberal business to challenge the validity thereof, is recognized."
A similar case is that of Friedland v. Hollywood,[11] wherein the District Court of *837 Appeal, Second District, held void an ordinance which would have allowed the variance for the construction of a service station in the vicinity of property owned by the plaintiffs.
Some of the foregoing cases attacking the validity of zoning ordinances came to the Circuit Court as petitions for writ of certiorari to review actions of the zoning board of adjustment under Florida Statutes Chapter 176, F.S.A.; others originated in the Circuit Court. On the question of standing to sue there is no basis for distinguishing between cases reaching the courts after appeal to a zoning board, in areas where such boards exist, and those cases originating in the court system.[12] Florida Statutes § 176.11, F.S.A., provides for appeals to the zoning board of adjustment by "any person aggrieved." Florida Statutes § 176.16, F.S.A., provides that "any person aggrieved" by the decision of the zoning board of adjustment may petition the Circuit Court for writ of certiorari.
An aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest which is or will be affected by the action of the zoning authority in question. The interest may be one shared in common with a number of other members of the community as where an entire neighborhood is affected, but not every resident and property owner of a municipality can, as a general rule, claim such an interest. An individual having standing must have a definite interest exceeding the general interest in community good share in common with all citizens. So-called "spite suits" will not be tolerated in this area of the law any more than in any other.
In determining the sufficiency of the parties' interest to give standing, factors such as the proximity of his property to the property to be zoned or rezoned, the character of the neighborhood, including the existence of common restrictive covenants and set-back requirements, and the type of change proposed are considerations. The fact that a person is among those entitled to receive notice under the zoning ordinance is a factor to be considered on the question of standing to challenge the proposed zoning action. However, since the notice requirements of the many zoning laws throughout the State vary greatly, notice requirements are not controlling on the question of who has standing. Persons having sufficient interest to challenge a zoning ordinance may, or may not, be entitled to receive notice of the proposed action under the zoning ordinances of the community.
It is to be remembered that even though a person has sufficient standing to challenge the action of the zoning authority, he must still carry the burden of proving that the challenged action of the zoning authority was not fairly debatable.[13]
The question certified to this Court, set out supra, has three parts. Part (1) deals with standing to enforce a valid zoning ordinance. The Boucher rule requiring special damages still covers this type of suit. However, in the twenty years since the Boucher decision, changed conditions, including increased population growth and *838 density, require a more lenient application of that rule. The facts of the Boucher case, if presented today, would probably be sufficient to show special damage.
Part (2) of the question certified to this Court deals with standing to attack a validly enacted zoning ordinance as being an unreasonable exercise of legislative power. As indicated above, persons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue.
Part (3) of the question certified deals with standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given. Any affected resident, citizen or property owner of the governmental unit in question has standing to challenge such an ordinance.[14]
The District Court found that petitioner Renard had sufficient standing to attack the rezoning here in question, but, on review of the record, determined that the rezoning was "fairly debatable" and so was a valid exercise of power by the zoning authority. We agree.
Accordingly, and for the foregoing reasons, the decision of the District Court of Appeal is affirmed.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON and McCAIN, JJ., concur.
NOTES
[1] Metropolitan Code of Dade County, § 33-316: "No person aggrieved by any zoning resoluton, order, requirement, decision or determination of an administration official or by any decision of the zoning appeals board may apply to the Court for relief unless he has first exhausted the remedies provided for herein and taken all available steps provided in this article ... it is intended and suggested that such decision may be reviewed by the filing of a petition for writ of certiorari in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, in accordance with the procedures and within the time provided by the Florida Appellate Rules for the review of the rulings of any commission or board; and such time shall commence to run from the date of the decision sought to be reviewed." (Emphasis supplied.)
[2] Renard v. Dade County, 249 So.2d 500, 502 (Fla.App.3rd 1971).
[3] 102 So.2d 132 (Fla. 1958).
[4] Id. at 135.
[5] Boucher v. Novotny, 102 So.2d 132, 135 (Fla. 1958); North Dade Bar Assoc. v. Dade-Commonwealth Title Ins., 143 So.2d 201, 205 (Fla.App.3rd 1962): "`* * * A public nuisance is an offense against the State, and as such is subject to abatement or indictment on the motion of the proper governmental agency. * * *

"`* * * An individual cannot maintain an action for a public nuisance as such. But when an individual suffers special damage from a public nuisance, he may maintain an action.'
"This rule has been applied in Florida to suits to enjoin a zoning violation. Boucher v. Novotny, Fla. 1958, 102 So.2d 132."
[6] Boucher has been subject to criticism even as applied to zoning violations: 12 Univ. Fla.L.Rev., Third Parties in Zoning, 16, 23, 40 (1959).
[7] 96 So.2d 784, 787 (Fla. 1957).
[8] 93 So.2d 86, 90 (Fla. 1956): "We encounter no difficulty in concluding that the appellees were entitled to bring the suit. They occupied their homes immediately across the street from the proposed parking area. They relied on the existing zoning conditions when they bought their homes. They had a right to a continuation of those conditions in the absence of a showing that the change requisite to an amendment had taken place. They allege that the contemplated change would damage them and that it was contrary to the general welfare and totally unjustified by existing conditions. This gave them a status as parties entitled to come into court to seek relief. True their rights were subject to the power of the city to amend the ordinance on the basis of a proper showing. Nonetheless, they have a right to insist that the showing be made."

See also, 35 Fla.Jur., Zoning Laws, § 30: "Persons adversely affected by zoning ordinances or the action of zoning agencies have a status as parties sufficient to entitle them to proceed in court to seek relief."
[9] 88 So.2d 751, 752 (Fla. 1956): "The petition for leave to intervene alleges that petitioners are within the same zoning district as the property described in the complaints in the consolidated causes, that the decree destroys the value of their property because petitioners have homes on said property which they use for residential purposes, therefore the decree of the lower court breaking these zoning restrictions and commercializing the district renders their property less suitable for residential purposes. Petitioners' property was purchased on the strength of the zoning ordinance and in reliance upon the fact that all property within the zoning district would be maintained as residential property. * * *

* * * * *
"We think the petition to intervene showed such an interest in the res that the ends of justice require that it be granted. * * * Nothing is more sacred to one than his home and the petitioners should have been permitted to come in and bring their rights in this to the attention of the court."
[10] 113 So.2d 849 (Fla.App.3rd); cert. denied 116 So.2d 773, (Fla. 1959).
[11] 130 So.2d 306 (Fla.App.2d 1961).
[12] 2 Rathkopf, Zoning and Planning, 36-1 (1971): "Generally, any person who can show that the existence or enforcement of a zoning restriction adversely affects, or will adversely affect, a property interest vested in him or that the grant of a permit to another or rezoning of another's land will similarly affect him, has the requisite justiciable interest in the controversy, and is a proper party plaintiff. In this aspect, the right of a litigant to sue for declaratory judgment or for an injunction is based upon the same criteria as are determinative of the status of a petitioner as a `party aggrieved' to bring certiorari to review the determination of a board of appeals or adjustment. The difference, if any, relates only to the forum and form of the remedy." (Emphasis supplied.)
[13] City of Miami v. Hollis, 77 So.2d 834 (Fla. 1959); City of Jacksonville v. Imler, 235 So.2d 526 (Fla.App.1st 1970).
[14] See e.g., Rhodes v. City of Homestead, 248 So.2d 674 (Fla.App.3rd 1971); Knowles v. Town of Kenneth City, 247 So.2d 748 (Fla.App.2d 1971).