FERGUSON, Judge
(concurring specially to denial of rehearing).
I write separately to expand upon the clarification of the original opinion and the question of standing under chapter 380, Florida Statutes (1983). The appellant, UKCA, relies upon the test for standing in zoning cases enunciated in Renard v. Dade County, 261 So.2d 832 (Fla.1972).[1] Specifically, UKCA argues that (1) it has standing to enforce the requirements of chapter 380 and the Monroe County Code under the first prong of the Renard test, and (2) it has standing to challenge violations of the procedural requirements of chapter 380 under the third prong of the Renard test. It does not contend that it has any standing under the second prong of the Renard test.
UKCA has no standing under chapter 380 to enforce the requirements of that chapter or to challenge any violations of the procedural requirements of that chapter. Under the provisions of section 380.-07(2), those with standing to challenge a local government development order are the landowner, the developer, an appropriate regional planning agency under certain circumstances, and the state land planning agency. An appeal must be taken, within 45 days after the order is rendered, to the Florida Land and Water Adjudicatory Commission (FLWAC). Any decision issued by FLWAC is subject to judicial review pursuant to chapter 120, Florida Statutes (1983). General Electric Credit Corp. of Georgia v. Metropolitan Dade County, 346 So.2d 1049, 1053 (Fla. 3d DCA 1977).
Several decisions of the district courts have held that no person or organization other than the four specifically named in section 380.07(2) have standing to appeal a development order issued under that chapter to FLWAC. See, e.g., Friends of the Everglades, Inc. v. Board of County Commissioners of Monroe County, 456 So.2d 904 (Fla. 1st DCA 1984); Caloosa Property Owners Association, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260 (Fla. 1st DCA), rev. denied, 438 So.2d 831 (Fla.1983). The Everglades court held, I think correctly, that chapter 380 does not replace traditional zoning and regulatory procedures where adjacent landowners or environmental groups may challenge the actions of local government, but merely imposes additional restraints on *1022 property use to meet broader concerns of the general public. Thus, aggrieved persons who are not specifically given standing under chapter 380 may not appeal an adverse development order issued under that chapter to FLWAC. Everglades, 456 So.2d at 908-09. The court recognized that:
[I]t is not the purpose of Chapter 380 to provide a forum for parties whose complaints focus on alleged detriment to activities they wish to conduct on adjoining land. “Regional impact” is concerned with matters affecting the public in general, not special interests of adjoining landowners.
Id. at 908 (quoting Suwannee River Area Council Boy Scouts of America v. State, Department of Community Affairs, 384 So.2d 1369, 1374 (Fla. 1st DCA 1980)).
UKCA attempts to avoid the implications of these decisions by relying on the three-pronged test for standing in zoning cases enunciated by the Florida Supreme Court in Renard. It contends that the foregoing decisions control only the right to appeal a development order to FLWAC, and that the Renard test governs the right to enforce the requirements of or challenge procedural violations of chapter 380 directly in circuit court. I disagree.
First, chapter 380 contemplates initial review only by FLWAC, and chapter 120 governs judicial review of FLWAC’s decision. The legislature clearly did not intend thát a challenge to a local government development order be made directly to the courts, or it would not have set up an elaborate administrative mechanism for review of such orders. Second, the legislature expressly described the parties with standing to appeal a development order to FLWAC.[2] To engraft the Renard test for standing in zoning cases onto the specific standing scheme set up by chapter 380 would be inconsistent with the statutory intent. Cf. Citizens Growth Management Coalition of West Palm Beach, Inc. v. City of West Palm Beach, Inc., 450 So.2d 204, 207 (Fla.1984) (because legislature did not specifically address question of who has standing to enforce the Local Government Comprehensive Planning Act of 1975, §§ 163.3161-.3211, Fla.Stat. (1981), court finds applicable the Renard test for standing in zoning actions). The remedies available to a party adversely affected by a chapter 380 development order are to intervene in the administrative proceedings which follow a recommended development order, or to challenge a zoning decision or taking of property which forms a part of or is related to the development order, or to obtain any other relief permitted by law. Caloosa, 429 So.2d at 1264-65.
Next, because UKCA’s complaint in this case alleges some violations of zoning law at the local level, we must also decide whether UKCA has standing to challenge the alleged violations of zoning law under any prong of the Renard test. As a nonprofit citizens’ organization, UKCA clearly has standing under the third prong of Re-nard to challenge the enactment of a zoning ordinance on procedural grounds. See Upper Keys Citizens Association, Inc. v. Wedel, 341 So.2d 1062 (Fla. 3d DCA 1977). UKCA does not, however, have standing under the first prong of the Renard test to enjoin the violation of an existing ordinance because it does not allege a special injury differing in kind and degree from that suffered by the general public. United States Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla.1974). The fact that the cause of action is based in part on breach of a settlement agreement which purportedly resolved the land use controversy, in my view, creates no independent standing ground. The claim based on the prior settlement agreement should be pursued by a separate enforcement action. Finally, the law is clear, and appellant does not attempt *1023 to dispute, that UKCA has no standing under the second prong of Renard to challenge the wisdom of any zoning action. To the extent that the majority perceives the compatibility of the board’s action with the settlement agreement as an ingredient of standing under that prong, I disagree.
Insofar as we are upholding that portion of the trial court’s order granting summary judgment on appellant’s claims under chapter 380 but reversing that part of the order which adversely disposes of appellant’s challenges to the zoning actions taken by the Monroe County Board of County Commissioners on procedural grounds, I concur in the denial of rehearing.

. In Renard, the supreme court delineated three separate categories of challenges to zoning ordinances and dictated the requirements for standing in each. In category 1 suits to enjoin a violation of an existing ordinance, one must allege and prove a “special injury" differing in kind from that suffered by other residents in the community. In category 2 suits to attack a zoning ordinance as arbitrary and unreasonable, one must have a “legally recognizable interest, which is adversely affected." Finally, to make a category 3 attack on a zoning ordinance as void because not enacted in accordance with proper procedures, one must be "[an] affected resident, citizen or property owner of the governmental unit in question.” Renard, 261 So.2d at 837-38.
As to category 1 suits, a non-profit corporation will rarely meet the "special injury" requirements in order to enjoin zoning violations. See, e.g., United States Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla.1974). A citizens' group has no standing to challenge the substantive validity of a zoning ordinance in a category 2 suit. City of Miami v. Save Brickell Avenue, Inc., 426 So.2d 1100, 1103 n. 2 (Fla. 3d DCA 1983) (dictum); Hemisphere Equity Realty Co. v. Key Biscayne Property Taxpayers Association, 369 So.2d 996 (Fla. 3d DCA 1979). Conversely, a citizens’ group does have standing to bring a category 3 suit to attack a zoning ordinance on the ground that it was illegally enacted due to the irregularity of the proceedings. Upper Keys Citizens Association, Inc. v. Wedel, 341 So.2d 1062 (Fla. 3d DCA 1977). To differentiate further between category 2 and category 3 suits, this court has stated that a citizens’ association "may, in short, attack how the resolution was enacted, but not what was enacted.” [e.s.] Save Brickell Avenue, Inc. v. City of Miami, 395 So.2d 246, 247 (Fla. 3d DCA 1981).

. Admittedly, the view that under chapter 380 standing in circuit court is limited to those enumerated in section 380.07(2) conflicts directly with the second district's holding in Pinellas County v. Lake Padgett Pines, 333 So.2d 472 (Fla. 2d DCA 1976), cert. dismissed, 352 So.2d 172 (Fla.1977) (person other than that named in section 380.07(2) has standing to enjoin violation of chapter 380 in circuit court where special injury satisfies first prong of Renard test).