## STATE OF FLORIDA v EVANS and STATE OF FLORIDA v OZMENT

### Case Nos. 90-21204-DD-A-41 and 91-3267-DD-A-41

County Court, Escambia County

June 4, 1991

### APPEARANCES OF COUNSEL

**Michael Gibson, Esquire,** Assistant State Attorney, for plaintiffs.

**F. T. Ratchford, Jr., Esquire,** for defendants.

### OPINION OF THE COURT

WILLIAM J. GREEN, County Judge.

*ORDER DENYING THE STATE'S MOTION TO STRIKE AND DENYING THE DEFENDANTS' MOTIONS IN LIMINE*

The State of Florida charges in separate informations that the defendants, Leonard Duane Evans and Patrick Lynn Ozment, each

unlawfully drove or was in actual physical control of an automobile while under the influence of alcoholic beverages or other chemical or controlled substance to such an extent that his faculties were impaired, or with a blood alcohol level of 0.10 percent or higher, contrary to section 316.193(1), Florida Statutes (DUI/DUBAL).

Each defendant has filed a motion to suppress as evidence in his case the results of his Intoxilyzer 5000 examination. The defendants assert as a basis for the motions that Rules 10D-42.023 and 10D-42.024 of the Florida Administrative Code are unconstitutional on their face and that they are unconstitutional as applied to each defendant. The State and the defendants agree that the issues involved are identical in each case and they have therefore been temporarily consolidated for the purpose of considering the pretrial motions.

Chapter 10D-42 Administrative Procedure Code was adopted by the Department of Health and Rehabilitative Services (HRS) pursuant to the authority of section 316.1932(1)(b) and seeks to ensure reliable scientific evidence for use in court proceedings and to protect the health of those being tested. Additionally, it serves to obviate the necessity of establishing as an evidentiary predicate; (1) that the test was reliable; (2) that it was performed by a qualified operator with proper equipment and (3) expert testimony concerning the meaning of the test. *State v Bender,* 382 So.2d 697 (Fla. 1980).

At hearing on the motions, the defendants requested that their motions be considered as motions in limine rather than motions to suppress, their positions being that the court should not suppress the results of the Intoxilyzer 5000 examinations but that the results of the examination should be deemed inadmissible absent the establishment of the necessary evidentiary predicate.

The State has filed a motion to strike each defendant's motion to suppress. The State cites section 120.68(2) of the Administrative Procedures Act (APA) contending that the trial court lacks jurisdiction to address the constitutionality of Rules 10D-42.023 and 10D-42.024.

*THE COURT'S JURISDICTION:* Section 120.56(1) of the APA provides:

Any person substantially affected by a rule may seek administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority.

Sections 120.68(1) and (2) of the APA provide in pertinent part:

(1) A party who is adversely affected by final agency action is entitled to judicial review . . . (2) Except in matters for which judicial

review by the Supreme Court is provided by law, all proceedings for review shall be instituted by filing a petition in the district court of appeal in the appellate district where the agency maintains its headquarters or where a party resides.

Rules are adopted and considered "final agency actions" when they are filed with the Department of State and as such are subject to judicial review under section 120.68. *Florida Administration Commission v District Court of Appeal, First District,* 351 So.2d 712 (Fla. 1977); *City of Key West v Askew,* 324 So.2d 655 (Fla. 1st DCA 1977). Accordingly, the defendants may have invoked the jurisdiction of the District Court of Appeal under section 120.68 by filing a petition seeking review of Rules 10D-42.023 and 10D-42.024 or they may have sought an administrative determination of the invalidity (or validity) of the rule under section 120.56 had they chosen to do so.

The issue remains concerning whether due process considerations attendant to a criminal prosecution allow a criminal defendant to challenge at trial, the constitutionality of an agency rule which directly impacts upon the admissibility of evidence which the state intends to use against him or whether he must obtain a continuance of his trial in order to seek relief by filing a petition in the District Court of Appeal under section 120.68, or in order to seek an administrative determination of the validity of the rules under section 120.56.

The State cites *Key Haven v Board of Trustees of Internal Improvement,* 427 So.2d 153 (Fla. 1982); *State v Smith,* 37 Fla.Supp. 2d 116 (Fla. Orange Cty. Ct. 1989); *State ex rel. Department of General Services, et al. v Willis,* 344 So.2d 580 (Fla. 1st DCA 1977); and *Myers v Department of H.R.S.,* 7 F.A.L.R. 5815 (Fla. Dept. of H.R.S. 1985) as authority for the proposition that this court lacks jurisdiction to decide the defendants' motions in limine. Although *Smith* is directly on point and supports the State's position, no other case cited by the State and no case cited in *Smith* dealt with this issue as it relates to a criminal prosecution.

Two as yet unreported county court cases found that the trial court had jurisdiction to consider the defendant's challenge to the State's use of chemical breath test evidence.[1] In *State v Catron,* Case No.: 74398IU, (Fla. Hillsborough Cty. Ct. April 5, 1991) the court rejected the State's argument that the validity of HRS rules could not be litigated in the trial court before exhausting administrative remedies.

---

[1] The Court attached the *Catron* and *Hoff* cases to its decision. Note: For the purposes of publication, those decisions have not been attached as exhibits to the foregoing decision.

*Catron* cites *State v Cumming,* 365 So.2d 153 (Fla. 1978) as an example of the exercise of jurisdiction by a trial court to consider the constitutionality of an administrative rule. Although the issue of jurisdiction was not specifically raised in *Cumming,* the Supreme Court, after dealing with the trial court's ruling on the constitutionality of the implementing statute, did not then remand the case for administrative review of the rule, but instead affirmed the trial court's findings that the rule was unconstitutionally vague and overbroad. In *State v Hoff, et al.,* Case No.: 90-122826 (Fla. Orange Cty. Ct. January 14, 1991), the court in dicta stated that a defendant has a due process right in a criminal prosecution to challenge the validity of a rule which allows the state to produce a major piece of evidence (the result of a chemical breath test) against him. This court disagrees with the ruling in *Smith* and aligns itself with *Catron* and *Hoff.*

*THE CONSTITUTIONALITY OF THE HRS RULES:* An analysis of a person's breath, in order to be considered valid, must have been performed substantially according to the methods approved by the Department of HRS. For that purpose, HRS is authorized to approve satisfactory techniques or methods of analyzing the person's breath for alcohol content. (Section 316.1932(1)(b) Florida Statutes).

Pursuant to its legislative authority, HRS promulgated Chapter 10D-42. In addition to numerous other requirements, Chapter 10D-42 requires each chemical test instrument, in order to be approved and registered for use in Florida and in order to maintain approval for use, to undergo a *test* for accuracy (10D42-022(3)), an *inspection* for accuracy (10D42-024(1)(c)) and a *check* for accuracy (10D42-023). Additionally, a check for reproducibility is required under 10D-42(1) (c).

*The Test for Accuracy:* In order to pass the test for accuracy, an instrument for which approval is sought must meet the requirements of 10D-42.022(3)(b). That subsection specifically defines the term "accuracy" as follows:

> [The instrument] shall measure the alcohol content of a vapor mixture with a systematic error of no more than plus or minus 10 percent of an ethanol vapor concentration of 0.050 percent weight per volume, and no more than plus or minus 5 percent at concentrations of 0.100 percent weight per volume and 0.150 percent weight per volume using a minimum of 50 simulator tests at each concentration. The systematic error is the difference between the mean measured value and known values expressed as a percentage of the known value. If the instrument meets the other requirements for

**100**

approval and if it passes the test for accuracy as specifically defined by the rule, it may be registered for use in this State.

*The Inspection for Accuracy:* At least once each calendar month after acceptance and registration, the instrument must be inspected for accuracy. The rule does not define the term "accuracy" as it relates to the inspection. However, Rule 10D-42.024(11)(d), which specifies the exact procedure for conducting the accuracy inspection, requires that the inspection be performed in accordance with procedures outlined in HRS Form 1514, Sep 82.[2] In order to comply with the requirements of Form 1514, the technician must record information identifying the instrument, check the lights and digital display as well as temperature and equilibrium and carrier gas pressure. He or she must record the standard test, the blank test, the results of three ethanol tests and the standard concentration or mix. The general appearance of the machine is noted as well, together with any remarks. After the foregoing information is recorded on the form, it is dated and signed by the technician. If the technician is satisfied that the machine is accurate, it remains in service.

*The Check For Accuracy and Reproducibility:* At least once each calendar month after the test for accuracy and presumably after passing each monthly inspection for accuracy, the instrument must be checked for accuracy and reproducibility. Again, the rule does not define the term "accuracy" and it does not define the term "reproducibility". The annual check is conducted and the results of the check are reported on HRS Form 713. The form basically reports that (1) the instrument is found to be in compliance with the statute and rules or (2) that it was corrected to be brought into compliance or (3) that its registration certificate has been suspended because of noncompliance. The procedure used to do the annual check of the instrument includes performing five simulator tests each at 0.0%, 0.050%, 0.100% and 0.200% alcohol concentration and five acetone simulator tests. The results of the twenty-five tests, together with any remarks, are recorded on a form designed for that purpose. That form is then dated, signed and attached to HRS Form 713 as evidence of the technician's determination that the instrument did or did not pass the accuracy and

---

[2] Rule 10D-42.024(11)(d) requires preventive maintenance to be performed in accordance with procedures outline in HRS Form 1514, Sep 82. The evidence established that preventive maintenance is being conducted using a HRS Form 1514, Feb 86. The latter form is identical to the former with the exception that it contains an additional requirement that three tests be conducted for the presence of acetone. Accordingly, the requirements of Rule 10D-42.024(1)(d) are being met notwithstanding the use of HRS Form 1514, Feb 86.

reproducibility check. The instrument is determined to pass the check if the results are within plus or minus 5% at 0.100% and 0.200% and plus or minus 10% at 0.50% alcohol concentrations.

The defendants contend that because Chapter 10D-42 does not specifically define "accuracy" as the term is to be applied in 10D-42.023 and 10D-42.024 and because it does not specifically define "reproducibility" as that term is to be applied in 10D-42.023, the rules are vague and ambiguous and that the determination of whether or not an instrument meets the requirement of accuracy and reproducibility cannot constitutionally be left to the technician conducting the inspection or check.

Statutes under which an administrative agency acts are presumed to be constitutional and the party asserting the contrary has the burden of showing that the statute conflicts with some designated provision of the state or federal constitution. The same presumption of validity accorded statutes is accorded regulations of an administrative agency in the legitimate exercise of the police power. *Varholy v Sweat,* 15 So.2d 267 (Fla. 1943); *Moore v Draper,* 57 So.2d 648 (Fla. 1952); *Agrico Chemical Company v State Department of Environmental Regulation,* 365 So.2d 759 (Fla. 1st DCA 1978).

In *Donaldson v State,* 16 F.L.W. S307 (Fla. May 9, 1991) the Supreme Court has answered the following certified question:

In a section 316.193 prosecution, where the state seeks, over defense objection, to admit the results of a breathalyzer test into evidence, to what extent must the state lay a foundation to show compliance with statutory provisions, administrative rules and agency procedures governing the licensing of technicians, the maintenance of equipment, and the administration of tests?

The court held that minor deviations in compliance with the HRS regulations, such as storage location or absolute timeliness of periodic inspection, will not prohibit the test results being presented, provided that there is evidence from which the fact finder can conclude that the machine itself remained accurate. After the state presents its evidence, a defendant may, in any proceeding, attack the reliability of the testing procedures and the qualifications of the operator. A defendant may also question compliance with HRS regulations and the effect on the machine's integrity of failing to follow them strictly.

Given the presumption of validity which must be accorded the HRS Rules, and given the precise definition of accuracy which must be met when each instrument is initially tested and registered for use in the

102

state, and given the monthly inspection and the annual check, each of which is done in compliance with forms promulgated by HRS, and given the ruling in *Donaldson,* the issue of whether an instrument's results are "accurate" or "reproducible" at the time of the monthly inspection or at the time of the annual check is a question for the finder of fact in any given case.

The court therefore determines that Rules 10D-42.023 and 10D-42.024 are not unconstitutionally vague or ambiguous on their face or as applied to these defendants.

Accordingly, it is ADJUDGED that the State's Motion To Strike is denied and each defendant's Motion in Limine is denied.

Because of the potential impact this issue may have on the large number of presently pending and future DUI/DUBAL cases in the state, the court pursuant to the provisions of Rule 9.030(b)(4)(A) certifies to be of great public importance, the following question:

ARE RULES 10D-42.023 AND 10D-42.024 UNCONSTITUTION-ALLY VAGUE AND AMBIGUOUS SO AS TO RENDER IN-ADMISSIBLE AT TRIAL THE RESULTS OF A CHEMICAL BREATH TESTING INSTRUMENT WITHOUT THE PROPO-NENT'S PRIOR ESTABLISHMENT OF THE TRADITIONAL EVIDENTIARY PREDICATE?

ORDERED at Pensacola, Escambia County, Florida this 4th day of June, 1991.